IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KYLE OSTROM,

       Plaintiff,

v.                                         Case No. 17-1162-JWB

FARM BUREAU FINANCIAL SERVICES,
et al.,

       Defendants.

### MEMORANDUM AND ORDER

This case comes before the court on Defendants' motion to dismiss Plaintiff's amended complaint for failure to state a claim. (Doc. 25.)[1] The motion has been fully briefed and is ripe for decision. (Docs. 10, 17, 26, 30.) Defendants' motion is GRANTED for the reasons set forth herein.

**I.     Motion to Dismiss Standards**

In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). In the end,

---

[1] Defendants originally moved to dismiss on November 22, 2017. (Doc. 9.) Plaintiff then filed a motion to amend, which was granted by Magistrate Judge James. (Docs. 18, 22.) Defendants now move to dismiss Plaintiff's amended complaint. Defendants' motion to dismiss the original complaint is therefore moot. (Doc. 9.) Defendants have incorporated and attached their earlier memorandum in support of the pending motion to dismiss. (Doc. 26.)

the issue is not whether Plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claims. *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

**II.    Facts**

Plaintiff worked for Trash-B-Gone in Hays, Kansas, as a "trash-collector" and a "trash-truck operator." (Doc. 24 at ¶ 20.) On July 7, 2015, Plaintiff was injured in the regular course of his employment. *Id.* As a result of his injuries, Plaintiff has incurred medical bills which have not been paid.

Plaintiff alleges that at some point, prior to July 7, 2015, "Justin Ziegler, David Stecklein and/or John Ziegler," who are owners or agents of Trash-B-Gone, "entered into a written and/or oral contract" with "Farm Bureau Agent Tina Quigley and/or other agent, servant and/or employee" of Defendants "Farm Bureau Financial Services, Farm Bureau Property & Casualty Insurance and/or Western Agricultural Insurance Company." (Doc. 24 at ¶ 8.) The insurance contract was to provide worker's compensation coverage for Trash-B-Gone. Plaintiff further alleges that Defendants failed to procure the worker's compensation insurance as required by the contract.

Additionally, Plaintiff alleges that Quigley - or another agent of Defendants - made fraudulent representations regarding the insurance coverage. In paragraph 29 of the amended complaint, Plaintiff alleges that there were oral representations made by an agent of Defendants to Justin Ziegler, David Stecklein and/or John Ziegler in which it was represented that Defendants would obtain a valid policy of worker's compensation insurance to indemnify Trash-B-Gone for any employee injuries that occurred during the course of employment. These representations were either made at the offices of Defendants <u>or</u> the offices of Trash-B-Gone on an unknown date prior to July 7, 2015. In paragraph 30, Plaintiff alleges that Quigley and other agents fraudulently

2

represented to Justin Ziegler and/or other Trash-B-Gone owners or representatives that Plaintiff and/or the employees were "listed on the [Trash-B-Gone Worker's Compensation] policy" or were "covered."  (Doc. 24 at ¶ 30.)   These representations were allegedly made by telephone, at the offices of Defendants, or at the offices of Trash-B-Gone on an unknown date prior to July 7, 2015.

Although the representations were not made to Plaintiff, Plaintiff alleges that the representations were "repeated by Trash-B-Gone to its employees including the Plaintiff."  (Doc. 35 at ¶ 30.)  Plaintiff further alleges that Defendants fraudulently omitted the fact that Trash-B-Gone's employees were not covered by a worker's compensation policy.  These omissions allegedly occurred prior to July 7, 2015.

Plaintiff contends that Defendants' actions have caused damages due to unpaid medical bills and poor credit.  Additionally, Plaintiff allegedly suffered bodily injuries as a result of his severe mental anguish when he realized that he did not have insurance to pay the medical bills. (Doc. 24 at ¶ 41.)  On or about August 26, 2015, Plaintiff filed a worker's compensation claim with the Kansas Department of Labor, Division of Workers Compensation.  (*See* Doc. 226, exh. 1.)[2]

On July 7, 2017, Plaintiff filed this diversity action against Defendants.  (Doc. 1.)  Plaintiff was granted leave to amend and filed his amended complaint on January 24, 2018.  (Doc. 24.)  In his amended complaint, Plaintiff brings several claims against Defendants which all stem from Defendants' alleged failure to procure worker's compensation insurance for Trash-B-Gone.

---

[2] Although this case is before the court on Defendants' motion to dismiss, the court may take judicial notice of public records in deciding a motion to dismiss when those records concern matters that bear directly upon the disposition of this case.  *Hodgson v. Farmington City*, No 16-4120, 675 F. App'x 838, 840–41 (10th Cir. Jan. 10, 2017).  Therefore, because the administrative case is directly related to the issues in this case, the court takes judicial notice of Plaintiff's claim filed before the Kansas Department of Labor.

**III.    Analysis**

    **I.    Counts I and IV**

Defendants move to dismiss counts I (failure to procure insurance) and IV (breach of contract) on the basis that Plaintiff cannot state a claim against Defendants until a final determination is made on his worker's compensation claim, citing *Keith v. Schiefen Stockham Ins. Agency, Inc.*, 209 Kan. 537, 498 P.2d 265 (1972).  In *Keith*, the Kansas Supreme Court recognized that an employee has a cause of action against an insurance broker for failing to procure insurance for worker's compensation liability.  The plaintiffs in *Keith* brought an action against the insurer <u>after</u> the conclusion of a worker's compensation proceeding in which it was determined that the employer did not have insurance coverage.  The Court held that the "plaintiffs were effectively prevented from suing defendants until it was finally determined in *Otta v. Johnson, supra* [the worker's compensation case], that insurance had not been procured, nor an election caused to be filed, and with respect to the action sounding in tort actual damages did not result until a final determination of those matters." *Keith*, 209 Kan. at 544.

Plaintiff argues that *Keith* does not preclude his action prior to the resolution of the worker's compensation proceeding as there is no dispute as to whether an insurance policy was in effect in this matter.  Plaintiff, however, fails to respond to Defendants' argument that Plaintiff does not have any claim for damages against Defendants until an adverse decision is entered in the worker's compensation matter.  As is evident from the pleadings in the worker's compensation matter, Plaintiff has interpleaded the Fund, which provides payment in the event that there is no insurance or the employer is insolvent. K.S.A. § 44–532a(a).

A summary of Kansas worker's compensation coverage is as follows:

In Kansas, employers covered by the Workers' Compensation Act (WCA) are liable to pay compensation to employees injured in the course of employment. K.S.A. § 44–501 (1981).

> The employer is required to secure payment of compensation by carrying insurance. Generally the employer can have worker's compensation insurance issued by an authorized insurance carrier, K.S.A. § 44–532(b)(1) (1981), or by becoming an approved self-insurer upon proof of financial ability. K.S.A. § 44–532(b)(2) (1981). The failure of an employer to be properly insured is a class C misdemeanor. K.S.A. § 44–532(c) (1981). In order to protect the injured employee, if an employer does not carry insurance and cannot compensate the injured employee,
>
>> ... the injured worker may apply to the director for an award of the compensation benefits ... to be paid from the workers' compensation fund.
>
> K.S.A. § 44–532a(a), as amended in chapter 213 § 2 [1982] Kan. Sess. Laws 967. If the injured employee is compensated from the Workers' Compensation Fund (the Fund),
>
>> [t]he commissioner of insurance, acting in his capacity as administrator of the workers' compensation fund, shall have a cause of action against the employer for recovery of any amounts paid from the workers' compensation fund....
>
> K.S.A. § 44–532a(b) as amended in Ch. 213 § 2 [1982] Kan. Sess. Laws 967.

*In re Payne*, 27 B.R. 809, 812 (Bankr. D. Kan. 1983).

The Fund was established in 1974, which was two years <u>after</u> the Supreme Court's decision in *Keith*. *See Workers Comp. Fund v. Silicone Distrib., Inc.*, 248 Kan. 551, 558–59, 809 P.2d 1199, 1205 (1991). Notably, the worker's compensation statutes were in part revised based on a "report by the National Commission on State Workmen's Compensation Laws [which] recommended that the states establish procedures 'to provide benefits to employees whose benefits are endangered because of an insolvent carrier or employer, **or because an employer fails to comply with the law mandating the purchase of workmen's compensation insurance**.'" *Id.* (quoting Minutes of the Senate Committee on Public Health and Welfare, 1974 Kansas Legislature, February 14, 1974) (emphasis supplied).

In this matter, Plaintiff's claim for damages against the insurer is not ripe. Plaintiff is proceeding against his employer and the Fund in the administrative proceeding. Should Plaintiff be successful, an award will be entered in his favor and paid from the Fund if the employer is

5

insolvent or otherwise failed to procure the required insurance.  If that occurs, Plaintiff would likely be unable to state a claim for damages against Defendants as Kansas law clearly states that an insurer is only liable for the coverage that would have been provided under the policy.  *Keith*, 209 Kan. at 541 (quoting *Rezac v. Zima*, 96 Kan. 752, 754-55, 153 P. 500 (1915) (an insurance broker is liable to the employee "for as much as would have been covered by the insurance, which they agreed to procure."))

Moreover, although *Keith* did not affirmatively state exhaustion was required in all claims against an insurer in this situation, such as a claim for breach of contract, the court specifically held that a tort action would not arise until a final determination of the worker's compensation action.  *Keith*, 209 Kan. at 544.  As a federal court sitting in diversity, the court declines to hold that an action such as this can go forward prior to the resolution of the administrative claim.  *See Taylor v. Standard Ins. Co.*, 28 F. Supp. 2d 588, 592 (D. Haw. 1997) ("To allow a plaintiff, who has yet to exhaust the administrative remedies regarding worker's compensation benefits, the privilege and forum to initiate suit against the insurer is contrary to public policy.")

In order to adjudicate Plaintiff's claim and damages, the court would have to determine issues that are within the exclusive jurisdiction of the Kansas Department of Labor under the Worker's Compensation Act, a task the court believes that Kansas courts would find outside of this court's province.  *See id.*  In the absence of any indication by Kansas courts that an employee can proceed against an insurer prior to the conclusion of his worker's compensation claim, the court would be "overstepping its bounds if it were to find cases of this type ripe for review."  *Id.*

Therefore, the court finds that Plaintiff must first exhaust his administrative claim prior to bringing claims against the insurer for damages arising out of a failure to procure worker's

6

compensation insurance. As explained in *Keith*, the statute of limitations is tolled while Plaintiff proceeds with his administrative claim.

## II. Remaining Claims

As the remaining claims arise out of the same conduct and seek the same damages, the court finds that those claims are also subject to dismissal as Plaintiff has not yet exhausted his administrative remedies. In any event, the court would nevertheless grant Defendants' motion on Plaintiff's remaining claims for the reasons raised in Defendants' motion to dismiss.

With respect to the fraud claim alleged in Count II, Plaintiff has failed to allege facts with specificity as required by Fed. R. Civ. P. 9(b). "In order to survive a motion to dismiss, an allegation of fraud must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Plastic Packaging Corp. v. Sun Chem. Corp.*, 136 F. Supp. 2d 1201, 1203–04 (D. Kan. 2001). When facts are "peculiarly within the opposing party's knowledge," a plaintiff may comply with Rule 9(b) by stating allegations of fraud based on information and belief as long as the "complaint sets forth the factual basis for the plaintiff's belief." *Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992).

Plaintiff has not complied with this standard and contends that depositions during discovery will allow him to determine the specifics of the fraud. (Doc. 30 at 5-6.) However, "allowing non-particular fraud claims to proceed to discovery defeats Rule 9(b)'s purposes of bringing an early end to frivolous claims which bring reputational damage." *Plastic Packaging Corp.*, 136 F. Supp. 2d at 1204. Plaintiff's complaint fails to make the required allegations regarding the fraud and fails to state specific allegations regarding the time, place and identity of the party relaying the allegedly false statement to him. At a minimum, Plaintiff should be able to allege specific facts concerning the false representations that were relayed to him and then make

7

allegations upon information and belief regarding the sources of the falsehoods. Alternative pleading is not an acceptable substitute for these requirements. Therefore, the fraud claim is subject to dismissal for failure to plead with specificity.

Plaintiff's KCPA (Count III) and UCC (Count V) claims are also subject to dismissal as those statutes do not apply to contracts of insurance. The KCPA governs deceptive acts or practices "in connection with a consumer transaction." K.S.A. § 50-626(a). A consumer transaction is defined as a "sale, lease, assignment or other disposition for value of property or services within this state (**except insurance contracts regulated under state law**) to a consumer." K.S.A. § 50-624(c) (emphasis supplied). Plaintiff's argument that his claim does not involve an insurance contract but involves a contract for employment is not persuasive. (Doc. 17 at 4.) The amended complaint alleges that this claim stems from the representations regarding an insurance contract. Therefore, the KCPA claim is subject to dismissal.

Finally, the UCC governs transactions in goods. K.S.A. § 84-2-102. An insurance contract does not constitute goods within the meaning of the UCC. K.S.A. § 84-2-105(1) (Goods are things "which are movable"); *see also Lansing Trade Grp., LLC v. OceanConnect, LLC*, No. 12-2090-JTM, 2012 WL 2449514, at *4–5 (D. Kan. June 26, 2012) (citing *Call v. Czaplicki*, 2010 WL 3724275, * 12 (D.N.J., Sept. 16, 2010) (insurance contract). Plaintiff's authority cited in his initial response does not state that an insurance contract is a good under the UCC. (*See* Doc. 17 at 4.) Therefore, the UCC claim is subject to dismissal.

## IV.     Conclusion

Defendants' motion to dismiss (Doc. 25) is GRANTED, without prejudice to refiling in the event Plaintiff receives an adverse ruling in his worker's compensation proceedings.

IT IS SO ORDERED this 4th day of June, 2018.

                                                 _s/ John W. Broomes_____
                                                 JOHN W. BROOMES
                                                 UNITED STATES DISTRICT JUDGE